J-S27017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.W.-W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3516 EDA 2019 |

Appeal from the Decree Entered November 14, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000581-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: A.W.-W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3517 EDA 2019 |

Appeal from the Order Entered November 14, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0003087-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: K.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3518 EDA 2019 |

Appeal from the Order Entered November 14, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001723-2018

| IN THE INTEREST OF: K.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3519 EDA 2019 |

Appeal from the Decree Entered November 14, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000582-2019

BEFORE:   SHOGAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED JULY 14, 2020**

M.W. (Mother) appeals from the decrees entered in the Philadelphia County Court of Common Pleas, Juvenile Division, involuntarily terminating her parental rights to her children, A.W.-W., a female born in January 2017, and K.B., a male born in July 2018 (collectively, the Children).[1]  Mother also appeals from the orders entered that same day, which changed the Children's permanent placement goals from reunification to adoption.  After careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] In addition, the trial court entered decrees terminating the parental rights of A.W.-W.'s putative father, K.W.; of K.B.'s putative father, whose initials are also K.B.; and of any unknown father that the Children may have.  Neither of the putative fathers, nor any unknown father, appealed from the termination of his parental rights.

We summarize the facts and procedural history of this matter as follows. The Philadelphia Department of Human Services (DHS) filed an application for emergency protective custody of A.W.-W. on November 20, 2017. According to the application, DHS received a report alleging that Mother had appeared at the hospital with A.W.-W., failed to supervise the child while there, and behaved belligerently by screaming and kicking down doors.[2] The trial court granted DHS's application and entered a shelter care order on November 22nd. DHS filed a dependency petition on November 30th, averring that it received several reports prior to the incident at the hospital, which raised additional concerns regarding Mother's care of A.W.-W. The court entered an order of adjudication and disposition on December 5, 2017.

DHS filed a dependency petition regarding K.B. shortly after his birth in July 2018. DHS averred that it received a report regarding alarming social media posts by Mother. Allegedly, Mother posted pictures depicting knives pointed toward her stomach prior to K.B.'s birth and pictures of herself with her hands around K.B.'s neck following his birth. On August 2, 2018, the trial court entered an order adjudicating K.B. dependent and placing him in foster care. Meanwhile, Mother made only minimal progress toward compliance with her Single Case Plan (SCP) goals and became incarcerated. While the details

---

[2] Mother allegedly informed hospital staff that a cab driver sexually assaulted her, and "threw [her] and [A.W.-W.] out of the vehicle[.]" Dependency Petition (A.W.-W.), 11/30/17, at ¶ h.

of Mother's incarceration are not entirely clear from the record, it appears that she was incarcerated sometime after a November 1, 2018 permanency review hearing and released prior to a subsequent hearing on June 20, 2019.[3]

On August 2, 2019, DHS filed petitions to terminate Mother's parental rights to the Children involuntarily and to change the Children's permanent placement goals from reunification to adoption. The trial court held a hearing on November 14, 2019, after which it entered decrees terminating Mother's parental rights and orders changing the Children's goals. On December 14, 2019, Mother timely filed four separate notices of appeal, each accompanied by a Pa.R.A.P. 1925(a)(2) concise statement of errors complained of on appeal.

> Mother now raises the following claims for our review:
>
> 1. Did [DHS] sustain the burden that Mother's rights should be terminated when there was evidence that Mother had completed and/or had been actively completing her permanency goals?
>
> 2. Was there was [sic] sufficient evidence presented to establish that it was in the best interest of the child to terminate Mother's parental rights?

_____

[3] In its termination and goal change petitions, DHS averred that Mother was incarcerated in January 2019, but that the Commonwealth withdrew the charges against her because witnesses failed to appear, and she was released in March 2019. Our review of the record has uncovered no evidentiary support for this averment.

Mother's Brief at 4 (trial court answers omitted).[4]

We address Mother's claims mindful of the following standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

---

[4] While Mother filed notices of appeal from the trial court's goal change orders, she failed to include any challenge regarding those orders in her Rule 1925(a)(2) concise statements or in her brief's statement of questions involved. Importantly, Mother included a concise statement in her brief, which did include a goal change claim, but the concise statements that she filed along with her notices of appeal did not. Mother also failed to develop any challenge to the goal change orders in her brief on appeal. Thus, Mother has waived any claim regarding the court's goal change decision. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa. Super. 2017) ("[T]his Court will not review a claim unless it is developed in the argument section of an appellant's brief . . . . Further, it is well-settled that issues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived."). Even if Mother had preserved a goal change claim for our review, our decision to affirm the decrees terminating her parental rights would render that claim moot. *See Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) ("[E]ven if Father had not waived his goal change claim, it would be moot in light of our decision to affirm the court's termination decrees."). We therefore affirm the November 14, 2019 goal change orders.

Section 2511 of the Adoption Act governs involuntary termination of parental rights. **See** 23 Pa.C.S. § 2511. It requires a bifurcated analysis:

> . . . . Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

**In re L.M.**, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In the instant matter, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(2), (5), (8), and (b).[5] We need only agree with the court as to any one subsection of Section 2511(a), in addition to Section 2511(b), to affirm. **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en*

---

[5] At the conclusion of the hearing, the trial court announced that it was not terminating Mother's parental rights pursuant to Section 2511(a)(1). N.T., 11/14/19, at 91-92 ("I will find that there's clear and convincing evidence to terminate Mother's right[s] under 2511(a)(2), (5), and (8) and 2511(b). . . . So, I did not find that I terminated her rights a[s] to (a)(1)."). The court states in its opinion, however, that it did terminate pursuant to Section 2511(a)(1). **See** Trial Ct. Op., 1/28/20, at 8-10. We further note the certified record contains two decrees terminating Mother's parental rights with respect to each child, one of which terminates pursuant to Section 2511(a)(1), and one of which does not. Based on the court's statements at the conclusion of the hearing, and because the information, printed in the lower right corner of the decrees, indicates that the decrees not terminating pursuant to Section 2511(a)(1) were the second set to be printed, we conclude that the court did not intend to terminate Mother's parental rights pursuant to Section 2511(a)(1).

*banc*). Here, we analyze the court's decision to terminate pursuant to Section 2511(a)(2) and (b), which provides as follows:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> \* \* \*

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

> \* \* \*

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first consider whether the trial court committed an abuse of discretion by terminating Mother's parental rights to the Children pursuant to Section 2511(a)(2).

> . . . In order to terminate parental rights pursuant to 23 Pa.C.S.[ ] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to

- 7 -

be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Mother argues on appeal that DHS failed to present sufficient evidence in support of its petition to terminate her parental rights involuntarily. She maintains that she had been participating in services, making progress toward compliance with her SCP goals, and attending her visitation with the Children. Mother's Brief at 12-14. Mother suggests that her most important remaining goal related to her alleged "cognitive impairment." *Id.* at 13. She complains that DHS failed to offer her services to address that impairment. *Id.* at 13-14.

In its opinion, the trial court explained its decision to terminate Mother's parental rights pursuant to Section 2511(a)(2) as follows, in relevant part:

> . . . . Mother has been minimally compliant with the permanency plan. [The] Children need permanency, which Mother cannot provide. The conditions and causes of Mother's incapacity cannot or will not be remedied by Mother because Mother has failed to consistently engage in completing her objectives. [A.W.-W.] has been adjudicated dependent since December 5, 2017, twenty-three months at the time of trial; and [K.B.] has been adjudicated

- 8 -

since August 2, 2018, fifteen months at the time of trial. Mother has had ample opportunity to put herself in a position to parent, but Mother has failed to do so. Mother's repeated and continued incapacity has not been mitigated. The DHS witnesses were credible. Mother has demonstrated that she is unwilling to remedy the causes of her incapacity to parent in order to provide [the] Children with essential parental care, control, or subsistence necessary for their physical and mental well-being. Termination under 23 Pa.C.S.[ ] §[ ]2511(a)(2) was also proper.

Trial Ct. Op. at 13 (citations to record omitted).

Our review of the record supports the trial court's conclusions. Mother's SCP goals included avoiding contact with K.B.'s putative father; attending the Achieving Reunification Center (ARC) for programs addressing her housing, employment, parenting, and anger management needs; stabilizing her mental health; following drug and alcohol treatment recommendations; submitting random drug screens; and attending visits with the Children. N.T. at 21-22. Community Umbrella Agency (CUA) case manager Gabrielle Sims testified that Mother made only minimal progress toward compliance with her goals. *Id.* at 27. Mother reported that she had avoided contact with K.B.'s putative father. *Id.* at 25-26. She also completed housing and employment programs at ARC, and obtained appropriate housing for reunification. *Id.* at 25. However, Mother lacked employment, and had yet to complete the ARC parenting and anger management programs. *Id.* at 27.

Furthermore, Mother failed to comply with both her mental health and drug and alcohol treatment goals. Ms. Sims testified that Mother attended mental health treatment in the summer of 2018, that she stopped when she

- 9 -

became incarcerated, and that she reengaged in July 2019. N.T. at 22-23, 54; *see also id.* at 71 (Mother clarifying that she attended only mental health treatment in the summer of 2018, and not drug and alcohol treatment). By the time of November 2019 hearing, Mother had attended only one therapy session[6] and had yet to begin drug and alcohol treatment.[7] *Id.* at 22-23, 53-54. Regarding Mother's drug screen goal, Ms. Sims explained that she attended two out of three of her most recent screens and tested positive for marijuana on both occasions.[8, 9] *Id.* at 53, 56.

Thus, the record demonstrates that Mother is incapable of providing the Children with proper parental care, and that she cannot or will not remedy her parental incapacity. The trial court placed A.W.-W. in foster care in November 2017 and placed K.B. in foster care approximately nine months later in August

---

[6] Ms. Sims testified that Mother's "last visit for therapy . . . was September 18[,]" and that her "last visit with the psychiatrist was November 6, 2019." N.T. 22-23. She stated later that Mother "only had one session for mental health[.]" *Id.* at 53-54.

[7] Mother testified that she attended drug and alcohol intake, and outpatient treatment appointments the week of the hearing. N.T. at 74-75.

[8] Mother previously produced two negative screens in January 2019. *See* DHS Exhibit 3 (Clinical Evaluation Unit Progress Report).

[9] DHS did not present testimony regarding whether Mother attended her visits with the Children consistently, although Ms. Sims testified that Mother's visits had to remain supervised because "we were still working on monitoring the visits and making sure that they're appropriate at the agency." N.T. at 26-27.

2018.  Subsequently, despite over a year of opportunities, Mother made only minimal progress toward compliance with her SCP goals.  The Children are in need of a permanent and stable home, and their lives cannot remain on hold forever.  ***See In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006) ("[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities.  The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.").  Therefore, we discern no abuse of discretion by the court in terminating Mother's parental rights pursuant to Section 2511(a)(2).[10]

Next, we consider whether the trial court committed an abuse of its discretion by terminating Mother's rights pursuant to Section 2511(b).  The requisite analysis is as follows:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child.  As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act.  Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of

---

[10] Contrary to Mother's argument on appeal, our review of the record reveals no indication that the primary obstacle preventing her from regaining custody of the Children was an alleged cognitive limitation for which DHS did not offer her services.  To the extent Mother is referring to her mental health goal, it is clear that she had access to services to address that issue.  Regardless, even accepting for the sake of argument that DHS did not offer Mother reasonable reunification services, those services are not a prerequisite to the termination of her parental rights pursuant to Section 2511(a)(2).  ***See In re D.C.D.***, 105 A.3d 662 (Pa. 2014).

- 11 -

our analysis. While a parent's emotional bond with his or her child is a major aspect of the [S]ection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (citation omitted).

Mother argues that DHS presented insufficient evidence regarding her bond with the Children. She contends that her visits with the Children went well and that they were happy to see her. Mother's Brief at 9. Mother also complains that DHS did not obtain an expert bonding evaluation and that the evidence presented during the hearing was insufficient for the CUA case manager to offer a "valid opinion" regarding the existence of a bond. *Id.* at 9, 15.

The trial court offered the following rationale for its decision to terminate Mother's parental rights pursuant to Section 2511(b), in relevant part:

> . . . . It is in [the] Children's best interest to terminate Mother's parental rights and [the] Children will not suffer any harm associated with the termination. Although Mother appears to maintain the desire to continue a relationship with [the] Children, specifically [K.B.], Mother still has not appropriately developed a parent/child bond with either child due to her inability to take responsibility as a parent. Mother has not put herself in a position

- 12 -

to provide safety and stability for [the] Children throughout the life of the case. . . . The DHS witnesses were credible. There was no error of law or abuse of discretion by the trial court. Therefore, the trial court's termination of Mother's parental rights to Children under 23 Pa.C.S.[ ] §[ ]2511(b) was proper.

Trial Ct. Op. at 20-21 (citations to record omitted).

Our review of the record again supports the trial court's decision. As detailed above, A.W.-W. was born in January 2017 and entered foster care in November 2017, when she was less than a year old. K.B. was born in July 2018 and entered foster care, the following month. The Children are in the same foster home. By the time of the hearing in November 2019, A.W.-W. had spent two thirds of her life in foster care, and K.B. had spent nearly his entire life in foster care.

Ms. Sims testified that Mother's relationship with A.W.-W. is "kind of distant." N.T. at 28. She explained that she did not observe a bond between Mother and A.W.-W., and that, during visits, "I would have to keep directing [A.W.-W.] to go back over to her mom." *Id.* Ms. Sims then testified that Mother and K.B. "seem very bonded." *Id.* at 31-32. She clarified her comments, however, explaining that Mother pays more attention to K.B., but Mother and K.B. do not appear to share a healthy parent/child relationship. *Id.* Ms. Sims opined that the Children share a parent/child relationship with their foster parent and that terminating Mother's parental rights would not cause the Children to suffer irreparable harm. *Id.* at 29, 33.

CUA outcome specialist James Allen testified similarly. Mr. Allen explained that A.W.-W.'s relationship with Mother is "estranged" and that he only sees Mother interact with A.W.-W. during visits if the child "does something wrong." N.T. at 58-59. While Mother understands that A.W.-W. is her child, Mr. Allen did not believe that A.W.-W. "would make that connection that this is actually her mother and not the caretaker." *Id.* at 59. Regarding K.B., Mr. Allen testified that Mother shows more affection and attention to him during visits and that they share a much more apparent bond. *Id.* at 58-60. However, Mr. Allen clarified that K.B. does not have "much of a reaction" when his visits with Mother are over and that his bond with Mother is not a secure attachment. *Id.* at 60-61.

Thus, the record confirms that the Children do not share a meaningful bond with Mother and that terminating Mother's parental rights will not cause the Children to suffer irreparable harm. Contrary to Mother's contentions, Ms. Sims and Mr. Allen provided ample testimony in support of their opinions regarding the Children's relationship with Mother. This is especially true given the Children's young ages and the fact that they have spent most of their lives in foster care. *See Matter of Adoption of M.A.B.*, 166 A.3d 434, 449 (Pa. Super. 2017) ("[A] child develops a meaningful bond with a caretaker when the caretaker provides stability, safety, and security regularly and consistently to the child over an extended period of time."). The trial court was free to rely on these opinions, and no expert evaluation was necessary. *See In re*

***Z.P.***, 994 A.2d 1108, 1121 (Pa. Super. 2010) ("When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well.") (citations omitted). Accordingly, we discern no abuse of discretion by the court in terminating Mother's parental rights pursuant to Section 2511(b).

Based on the foregoing analysis, we conclude the trial court did not abuse its discretion by terminating Mother's parental rights to the Children involuntarily. In addition, Mother waived any challenge to the orders changing the Children's permanent placement goals to adoption. We therefore affirm the November 14, 2019 termination decrees and goal change orders.

Decrees affirmed. Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/14/2020